**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION**

_____
                                                             )
Suzanne C. Clarke and                          )
Conise P. Dillard,                                   )
on behalf of themselves and all others   )
similarly situated,                                  )
                             Plaintiffs,            )
          v.                                              )          **Civil Action No. ___**
                                                             )          **CLASS ACTION COMPLAINT**
                                                             )          **JURY TRIAL REQUESTED**
Baptist Memorial Healthcare Corporation;  )
Methodist Healthcare                           )
                                                             )
                             Defendants.         )
_____)

Plaintiffs, by and through counsel, on behalf of themselves and all others similarly situated, bring this action against defendants for damages, and demand trial by jury, complaining and alleging as follows:

## NATURE OF THE ACTION

1.      Defendants, which own and operate hospitals in the Memphis Metropolitan Statistical Area ("Memphis MSA" or "Memphis area"), have for years conspired among themselves and with other hospitals in the Memphis MSA to depress the compensation levels of registered nurses ("RNs") employed at the conspiring hospitals, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2.      In furtherance of their conspiracy, defendants and their co-conspirators also agreed to regularly exchange detailed and non-public information about the compensation each is paying or will pay to its RN employees. The agreement to exchange such information has facilitated the formation, implementation and

enforcement of defendants' wage-fixing conspiracy.  Pursuant to this agreement defendants and their co-conspirators in fact have exchanged such information, through meetings, telephone conversations and written surveys.  The exchange of this information itself has suppressed competition among Memphis-area hospitals in the compensation of RN employees, and has depressed the compensation they have paid to such employees, in violation of Section 1 of the Sherman Act.

        3.        Defendants' conspiratorial conduct has occurred in the context of a national nursing shortage.  Absent their conspiracy, Memphis-area hospitals would have responded to the nursing shortage by, among other things, substantially increasing RN compensation in an effort to attract a sufficient number of RNs to their respective hospitals.  The history of hospital RN compensation and vacancy rates in the Memphis MSA, however, reveals that hospital RNs are not being compensated at competitive levels.  Despite years of high vacancy rates, compensation for hospital RNs in the Memphis MSA has remained low and surprisingly stagnant.  The few compensation increases in the past several years have been far too small to substantially decrease the area's nursing shortage.

        4.        Plaintiffs, on their own behalf and on behalf of the Class defined below, seek to recover for the compensation properly earned by RNs employed at Memphis-area hospitals but unlawfully retained by such hospitals as a result of the conspiracy alleged herein.  Plaintiffs also seek costs, including reasonable attorneys' fees and interest, as allowed by law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

6. Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c).

## PARTIES

7. Plaintiff Suzanne C. Clarke is an RN who worked as an RN at hospitals operated by Methodist Healthcare from 1979 until 2006. She resides in Memphis, Tennessee.

8. Plaintiff Conise P. Dillard is an RN who worked as an RN at Baptist Memorial Hospital in Memphis from 1998 until 2004 and from 2005 until March 2006. She resides in Cordova, Tennessee.

9. Defendant Baptist Memorial Healthcare Corporation ("Baptist Memorial") is a Tennessee corporation with its principal place of business located at 350 North Humphreys Boulevard, Memphis, Tennessee 38120. Baptist Memorial is a healthcare system that operates hospitals and health care facilities within the Memphis MSA, including the following hospitals: Baptist Memorial Hospital – Memphis ("Baptist Hospital"), located at 6019 Walnut Grove Road, Memphis, Tennessee 38120, which has a 625 bed capacity and employs approximately 840 RNs; Baptist Memorial Hospital for Women ("Baptist for Women"), located at 6255 Humphreys Boulevard, Memphis, Tennessee 38120, which has a 140 bed capacity and employs approximately 203 RNs; Baptist Memorial Hospital – DeSoto ("Baptist DeSoto"), located at 7601 Southcrest Parkway, Southaven, Mississippi 38671, which has a 199 bed capacity and employs

3

approximately 284 RNs; Baptist Rehabilitation – Germantown ("Baptist Germantown"), located at 2100 Exeter Road, Germantown, Tennessee 38131, which has a 51 bed capacity and employs approximately 50 RNs; Baptist Memorial Hospital – Tipton, ("Baptist Tipton") located at 1995 Highway 51 South, Covington, Tennessee 38019, which has a 54 bed capacity and employs approximately 98 RNs.

10.     Defendant Methodist Healthcare is a Tennessee corporation with its principal place of business located at 1265 Union Avenue, Suite 700, Memphis, Tennessee 38104.  Methodist Healthcare is a healthcare system, which operates hospitals within the MSA, including Methodist University Hospital ("Methodist Hospital"), which is located at 1265 Union Avenue, Suite 700, Memphis, Tennessee 38014.  Methodist Hospital is a private hospital located within the Memphis MSA.  It has a 1281 bed capacity and employs approximately 2676 RNs.  Methodist Healthcare also operates other hospitals within the Memphis MSA, including the following hospitals:  Methodist North Hospital ("Methodist North"), located at 3960 New Convington Pike, Memphis, Tennessee 38128; Methodist South Hospital ("Methodist South"), located at 1300 Wesley Drive, Memphis, Tennessee 38116; and Methodist LeBonheur Germantown Hospital ("Methodist Germantown"), located at 7691 Poplar Avenue, Germantown, Tennessee 38138; and Methodist Fayette Hospital ("Methodist Fayette"), located at 214 Lakeview Drive, Somerville, Tennessee 38068.

## CO-CONSPIRATORS

11.     Various other hospitals and individuals not named as defendants in this complaint have participated as co-conspirators with defendants in the violations alleged herein.

## **CLASS ACTION ALLEGATIONS**

12. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(3) on their own behalf and on behalf of the following Class:

> All persons employed by any defendant or co-conspirator to work in a hospital in the Memphis MSA as an RN at any time from June 20, 2002 until the present.

13. Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of defendants. As of 2005, there were more than 6,000 full-time-equivalent RNs employed by Memphis area hospitals.

14. Questions of law and fact that are common to the plaintiffs and other members of the Class predominate over questions that affect only individual members. The questions of law and fact that are common to the Class include:

   a. Whether Memphis-area hospitals, including defendants, have conspired to depress the compensation they paid to their RN employees during the Class period;

   b. Whether the alleged conspiracy has been effective in depressing RN compensation;

   c. Whether Memphis-area hospitals, including defendants, have agreed to share regularly with each other detailed and non-public data about current and prospective RN employee compensation;

   d. Whether defendants and the other Memphis-area hospitals have regularly exchanged detailed and non-public information about current and future RN employee compensation;

  e. Whether the exchange of such information suppressed competition among Memphis-area hospitals in the compensation of RN employees, and depressed the compensation paid to such employees; and

  f. The formula and data for estimating the amount by which Class members' compensation was depressed.

 15. Plaintiffs' claims are typical of the claims of the members of the Class because plaintiffs, like all Class members, are RNs who have been employed by one or more of the Memphis-area hospitals during the Class period and have been damaged by the unlawful conduct alleged herein. Plaintiffs, by advancing their own claims, will also advance the claims of all members of the Class.

 16. Plaintiffs and their counsel will fairly and adequately protect the interests of all Class members. There are no material conflicts between plaintiffs' interests in this litigation and those of Class members that would make class certification inappropriate. Counsel for plaintiffs are experienced in antitrust class actions, and will vigorously assert plaintiffs' claims and those of the other Class members.

 17. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the causes of action alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this case that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

18. Each of the hospitals named as a defendant herein provides patient care for persons coming to that hospital from states other than Tennessee.

19. Each defendant named herein compensates the RNs it employs within the Memphis MSA in part with funds provided by insurance carriers and other health care providers that are located in states other than Tennessee.  These carriers and providers render payments to each named defendant by mailing funds across state lines.

20. Each defendant named herein also compensates the RNs it employs within the Memphis MSA in part with Medicare funds paid to each defendant by the United States; these payments to each named defendant are mailed across state lines.

21. The defendants named herein also operate hospitals in states other than Tennessee.

22. The unlawful conduct alleged herein directly involves and substantially affects interstate trade and commerce.

## FACTUAL BACKGROUND

### The Memphis MSA Hospital RN Market

23. The Memphis MSA is comprised of Fayette County, Tennessee, Shelby County, Tennessee, and Tipton County Tennessee, as well as neighboring counties in Arkansas and Mississippi.

24. Hospitals in the Memphis MSA currently employ more than 6,000 full-time-equivalent RNs.

25. This market is heavily concentrated.  The named defendants employ approximately 68% of the hospital RNs in the Memphis MSA.

**Conspiracy to Suppress RN Compensation**

26. Beginning before June 2002 and continuing to the present, defendants have conspired with each other and with other Memphis-area hospitals to depress the compensation paid to RNs employed at hospitals within the Memphis MSA.

27. In furtherance of their conspiracy, defendants and their co-conspirators have done those things they agreed to do, including:

   a. Agreeing to regularly exchange, and regularly exchanging, detailed and non-public data concerning the compensation each is paying or will pay to its RN employees;

   b. Agreeing not to compete, and not competing, with each other in the setting of RN employee compensation;

   c. Paying RN employees at the same or nearly the same rate as each other; and

   d. Jointly recruiting RNs at job fairs and elsewhere to avoid competing to attract new RNs to their respective hospitals.

28. In particular, during and before the Class period, the actions of defendants and their co-conspirators taken in furtherance of the conspiracy have included the following.

29. Human resources employees working at defendant and co-conspirator hospitals have regularly surveyed each other to determine the compensation for RNs at competing hospitals, including any scheduled increases in RN compensation. These information exchanges have increased in frequency and detail at the end of each fiscal year when hospitals draft budgets and decide on RN compensation levels for the following year. Hospital administrators in the Memphis MSA have used this information

to set RN compensation. Human resources employees have been evaluated by their superiors on their ability to accomplish this RN compensation coordination.

30. During the class period, hospitals within the Memphis MSA have paid very similar RN compensation.

31. Defendants' unlawful conspiracy has had the following effects, before and during the Class period:

   a. Competition among defendants and their co-conspirators in the recruitment and compensation of hospital RN employees in the Memphis area has been restrained;

   b. Compensation for hospital RN employees in the Memphis MSA has been at artificially low levels; and

   c. Memphis-area hospitals have underutilized RNs, yielding low nurse-to-patient ratios, forcing RNs to work harder for longer hours, and reducing patient quality of care.

32. Defendants' conspiracy to depress RN wages raises a serious healthcare issue. The Antitrust Division of the U.S. Department of Justice noted in its "Statements of Antitrust Enforcement Policy in Health Care" that "[a] collusive restriction on the compensation paid to health care employees, for example, could adversely affect the availability of health care personnel." Similarly, numerous studies have shown a strong correlation between the numbers of RNs that a hospital employs per patient and the hospital's morbidity and mortality rates. Although defendants and their co-conspirators, like hospitals across the country, complain about the RN shortage, they have not taken

9

the most basic remedial action to alleviate it – they have not offered RNs competitive wages.

### Injury to Plaintiffs and the Class

33. During the Class Period (and before), plaintiffs have suffered substantial economic harm in the form of lost compensation as a direct result of defendants' and their co-conspirators' unlawful agreement to depress RN compensation and their unlawful agreement to exchange RN compensation information.

### COUNT I

### CONSPIRACY TO DEPRESS WAGES IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

34. Plaintiffs re-allege the allegations in paragraphs 1-33 as if set forth fully herein.

35. Beginning before June 2002 and continuing until the present, defendants and their co-conspirators have engaged in a continuing conspiracy in restraint of trade to depress the compensation of RNs employed at hospitals in the Memphis MSA, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

36. Pursuant to this unlawful conspiracy, defendants and their co-conspirators have set the compensation of RNs employed at hospitals in the Memphis MSA at artificially low levels.

37. As a result of the unlawful conspiracy alleged in this Count, plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

## COUNT II

### CONSPIRACY TO EXCHANGE COMPENSATION INFORMATION IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

38.     Plaintiffs re-allege the allegations in paragraphs 1-37 as if set forth fully herein.

39.     Beginning before June 2002 and continuing until the present, defendants and their co-conspirators have engaged in a continuing agreement to regularly exchange detailed and non-public information about the compensation being paid or to be paid to their RN employees.  This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

40.     This information-exchange agreement has reduced competition among Memphis-area hospitals in the compensation of their RN employees and has depressed the compensation of such employees.

41.     The relevant geographic market for the claim alleged in this Count is the Memphis MSA, and the relevant service market consists of the services provided to hospitals by RN employees.

42.     A slight decrease in RN compensation from a competitive level could be imposed collectively by the conspiring hospitals in the Memphis MSA without causing too many RNs to move to any non-conspiring hospitals within the Memphis MSA, to non-hospital employers within the Memphis MSA or to employers outside the Memphis MSA.

43.     RNs often are constrained from moving to another geographic area because of region-specific licensing requirements, as well as other professional and familial obligations.

44. Hospital RNs possess unique skill sets and gain industry-specific experience as they work, which renders them more valuable to hospitals than to non-hospital RN employers. As they gain experience, hospitals become the only practical outlets for hospital RNs to sell their services at an amount reflecting their skills and knowledge. Other potential employers, such as doctors' offices, nursing homes and outpatient clinics, offer RNs compensation substantially below that offered by hospitals.

45. Memphis-area hospitals expend significant resources accumulating information about compensation paid to RNs at other hospitals in the Memphis MSA, but not about compensation paid to non-hospital RNs or RNs working outside the Memphis MSA. Memphis-area hospitals rely on this compensation information to set RN compensation levels, reflecting their own understanding that the relevant market involves only hospital RN employees in the Memphis area.

46. Defendants and their co-conspirators comprise nearly 100% of the hospitals within the Memphis MSA. Collectively, they have substantial market power within the relevant market, including the power jointly to set hospital RN employee compensation below competitive levels. This joint power clearly exists because it in fact has been used to pay Class members sub-competitive compensation. Moreover, RNs, like most laborers, cannot withhold their services until a later date as a means of negotiating for a higher compensation rate. They depend on a regular income. This weakens their negotiating position with hospitals and enhances the hospitals' market power.

47. The information-exchange agreement has had the effect of suppressing competition among Memphis-area hospitals in the compensation of their RNs. The agreement's anticompetitive effect is apparent from the following facts, among others:

   a. The information regularly exchanged by Memphis-area hospitals pursuant to the agreement has been detailed and non-public information about current and future RN compensation. An agreement to exchange information of this type eliminates a major incentive of hospitals to increase RN compensation. The advantage of raising RN compensation is to attract more and better RN candidates by exceeding the compensation (as estimated from properly available competitive intelligence) paid by competing hospitals. But if a hospital knows that it cannot keep its superior compensation confidential from competitors, it will not offer such compensation in the first place. Without confidentiality, a hospital knows that most or all competing hospitals will match its higher compensation levels. The result is higher labor costs with no competitive advantage. An agreement to regularly exchange detailed and non-public information about current and prospective RN compensation assures that superior compensation will be timely and specifically known by competitors. Such an agreement, therefore, eliminates the incentive of hospitals to outbid their competitors.

   b. Hospitals view RNs, within a few basic categories of experience and specialization, as fungible, permitting hospitals readily to compare and match each other's compensation.

    c.   The exchange of compensation information increases the relative bargaining power of hospitals in setting RN wages. With such information, hospitals know what others are paying their RN employees, while RN employee applicants, who lack access to most or all of such (non-public) information, know much less about the competitive landscape.

    d.   The regularity and detail of the information exchanged, the relationships of trust developed among the individuals exchanging the information, and the assurances given that the information would not be used for competitive advantage, encouraged defendants and their co-conspirators to use the information to match and not exceed each other's RN employee compensation levels.

48. For these reasons, the effect of the information-exchange agreement, before and during the Class period, has been to reduce competition among hospitals in the compensation of RN employees and to depress such compensation.

49. As a result of the unlawful agreement alleged herein to exchange RN compensation information, plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray that:

A. The Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

  B. Defendants' actions alleged herein be adjudged and decreed to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

  C. Plaintiffs and the other members of the Class recover their damages against each defendant, jointly and severally, in an amount to be determined, and that this damage amount be trebled pursuant to 5 U.S.C. §15(a);

  D. Plaintiffs and the other members of the Class, to the greatest extent allowed by law, be awarded interest at the highest legal rate from and after the date of service of this Complaint;

  E. Plaintiffs and the other members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

  F. Plaintiffs and the other members of the Class be granted such other relief deemed proper to this Court.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable in this case.

Dated: June 20, 2006        s/Gary K. Smith (#1824)
               GARY K. SMITH (#1824)
               GARY K. SMITH & ASSOCIATES
               100 Peabody Place, Suite 1300
               Memphis, Tennessee 38103
               Tel.: (901) 544-6399
               Fax: (901) 544-6398

MICHAEL D. HAUSFELD
DANIEL A. SMALL
JOSEPH M. SELLERS
CHARLES P. TOMPKINS
ALLYSON B. BAKER
COHEN MILSTEIN HAUSFELD
& TOLL, P.L.L.C.
1100 New York Ave., NW
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699


DAVID P. DEAN
MARY JOYCE CARLSON
JAMES & HOFFMAN
1101 17th St., NW
Suite 510
Washington, D.C. 20036-4748
 Tel: (202) 496-0500
Fax: (202) 496-0555

MICHAEL P. LEHMANN
THOMAS P. DOVE
KIMBERLY A. KRALOWEC
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 433-2070
Fax: (415) 982-2076

DANIEL E. GUSTAFSON
JASON S. KILENE
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel.:  (612) 333-8844
Fax:  (612) 339-6622

MARK A. GRIFFIN
RAYMOND J. FARROW
KELLER ROHRBACK L.L.P
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

Attorneys for Plaintiffs