IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **SUZANNE C. CLARKE, et al.**      ) | |
| )  | |
| Plaintiffs,               )  | Case No. 06-2377 |
| )  | |
| v.                                  )  | |
| )  | |
| **BAPTIST MEMORIAL HEALTHCARE CORP.**  ) | |
| **and METHODIST HEALTHCARE,**          ) | |
| )  | |
| Defendants.               )  | |

---

**ORDER DENYING PLAINTIFFS' MOTION TO INTERVENE**

---

Before the Court is Plaintiffs' September 18, 2009, Motion to Intervene by which Plaintiffs seek permission for Anna Bachelder to intervene as a proposed class representative in this private antitrust suit. Because Plaintiffs have waited two years since they undeniably knew of serious questions about the adequacy of their original proposed class representatives and because any intervention at this stage would prejudice the Defendants, the Court DENIES the motion.

**I.   Factual and Procedural Background**

Plaintiffs Suzanne C. Clarke and Conise Dillard filed the pending suit on June 20, 2006, against Defendants Baptist Memorial Healthcare Corporation and Methodist Healthcare. Defendants are the two largest providers of

medical care in the Memphis Metropolitan Statistical Area ("Memphis area"), which consists of the counties of Shelby, Fayette, and Tipton in Tennessee, along with neighboring suburbs in Arkansas and Mississippi. (Compl. ¶¶ 1, 23.) Clarke is a Registered Nurse ("RN") who worked at hospitals operated by Methodist Healthcare from 1979 until 2006. (Id. ¶ 7.) Dillard worked as an RN at Memphis' Baptist Memorial Hospital from 1998 until 2004 and again from 2005 until March 2006. (Id. ¶ 8.)

Plaintiffs allege that, beginning in June 2002 and continuing to the present date, Defendants have illegally conspired to depress the wages paid to RNs in Memphis-area hospitals in violation of Section 1 of the Sherman Act. (Id. ¶ 26) See also 15 U.S.C. § 1. As part of this alleged conspiracy, Plaintiffs assert that Defendants, along with other Memphis-area hospitals who are named as co-conspirators, but not as defendants, 1) agreed to and did regularly exchange detailed and non-public data about the compensation each is paying or will pay to its RN employees; (2) agreed not to compete, and did not compete, with each other in the setting of RNs' compensation; (3) paid all RNs at the same or nearly the same rate; and (4) jointly recruited RNs at job fairs and elsewhere to avoid competition in their efforts to attract new RNs to their

respective hospitals. (Id. ¶ 27.)  Defendants allegedly are able to succeed in this conspiracy because they employ approximately 68% of the more than 6,000 full-time-equivalent hospital RNs in the Memphis area.  (Id. ¶¶ 24-25.)

Plaintiffs filed this action on behalf of themselves and a purported class composed of "[a]ll persons employed by any defendant or co-conspirator to work in a hospital in the Memphis [area] as an RN at any time from June 20, 2002 until the present."  (Id. ¶ 12.)  Even as they filed the complaint, however, Plaintiffs' counsel were aware of a potential conflict that would hinder Clarke's efforts to serve as a representative of the proposed class.  (See Plaintiffs' Memorandum in Support of Motion to Intervene at 1 (noting that counsel knew of this potential conflict "[f]rom the outset of this litigation").) ("Pls.' Memo") Clarke had worked for the Nurse Alliance, an advocacy group affiliated with the Service Employees International Union ("SEIU").  (Clarke Dep. at 21, 25.)  In her testimony, Clarke declared that she would resist any monetary settlement in this case if it did not also reduce the nurse-to-patient ratio in Memphis-area hospitals, (id. at 265-65.), a primary goal of the Nurse Alliance and the SEIU.  (Id. at 254-55, 264-65.)  Unsurprisingly, some

3

potential class members might have found themselves in disagreement with Clarke's priority. See Clarke v. Baptist Mem'l Healthcare, No. 06-2377, Order Denying Plaintiffs' Motion for Class Certification and Appointment of Counsel, at 13 (W.D. Tenn. Sept. 4, 2009) (noting the conflict). ("Clarke Certification Order")

Despite this hurdle, Plaintiffs' counsel were unconcerned because Co-Plaintiff Dillard remained a viable candidate to serve as a potential class representative. (Pls.' Memo at 1.) This changed when counsel learned in August 2007 that Dillard had filed for bankruptcy protection. (Plaintiffs' Memorandum in Support of Motion to Amend Scheduling Order and Complaint, Dkt. No. 153, at 3.) ("Pls.' Scheduling Memo") Although the August 28, 2007, deadline to add parties had not yet passed, Plaintiffs' counsel made no effort to add Bachelder as a potential class representative. (See Supplemental Scheduling Order, Dkt. No. 139, at 1.) Instead, Plaintiffs waited until November 9, 2007, to inform Defendants of their intention to seek permission to add Bachelder as an additional plaintiff. Clarke v. Baptist Mem'l Healthcare, No. 06-2377, Order Denying Plaintiffs' Motion for Leave to Amend the Scheduling Order and Complaint, at 10 (W.D. Tenn. Feb. 13, 2008). ("Clarke Scheduling Order")

4

Plaintiffs did not file their Motion to Amend the Scheduling Order and Complaint until January 4, 2008 – almost five months after Plaintiffs first learned of Dillard's bankruptcy filing. (Clarke Scheduling Order at 11.) Magistrate Judge Diane K. Vescovo denied Plaintiffs' motion as untimely. (Clarke Scheduling Order at 11-12.) In her February 13, 2008 order, Magistrate Judge Vescovo noted that Plaintiffs had no valid excuse for failing to seek an extension of the August 28, 2007, deadline, particularly when Bachelder had signed a retainer agreement with Plaintiffs' counsel for this case on June 30, 2006, ten days after Plaintiffs filed suit. (Pls.' Scheduling Memo at 3; see also Clarke Scheduling Order at 3.)

Following the denial of their Motion to Amend the Scheduling Order and Complaint, Plaintiffs proceeded to file and litigate their Motion for Class Certification and Appointment of Counsel. This Court denied Plaintiffs' certification motion on September 4, 2009, finding that Clarke and Dillard were not adequate class representatives because of their class conflicts and bankruptcy proceedings, respectively. (Clarke Certification Order at 13-16.) After the denial of class certification, Plaintiffs filed the present Motion to Intervene, seeking to allow Bachelder to join the suit as a named plaintiff

5

and proposed class representative. Bachelder seeks to intervene as of right and permissively. See Fed. R. Civ. P. 24(a)-(b). Defendants have filed a response in opposition, arguing that Plaintiffs' motion is untimely and would prejudice the Defendants if granted. (Defendants' Response in Opposition to Motion to Intervene at 1-2.) ("Defs.' Resp.")

**II.   Standard of Review**

Federal Rule of Civil Procedure 24 ("Rule 24") allows interested parties to intervene in a civil suit either as of right or permissively. A party may intervene as of right when she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [her] ability to protect [her] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The Sixth Circuit has established a four-factor test to determine when intervention under Rule 24(a) is appropriate:  1) the application must be timely; 2) the applicant's legal interest in the case must be substantial; 3) absent intervention, the applicant's ability to protect her interest will be impaired; 4) the parties already before the court cannot adequately represent the applicant's

6

interests. Stupak-Thrall v. Glickman, 226 F.3d 467, 471 (6th Cir. 2000). Where a proposed intervenor fails to meet all of the four criteria, a court must deny the motion to intervene as of right. Id.; Grubbs v. Norris, 870 F.2d 343, 345 (6th Cir. 1989).

The standard required relaxes somewhat when a party seeks to intervene permissively under Rule 24(b). Stupak-Thrall, 226 F.3d at 472. Rule 24(b) provides that a court, in its discretion, may allow intervention where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Permissive intervention remains inappropriate where it will cause "undu[e] delay or prejudice." Fed. R. Civ. P. 24(b)(3).

**III. Analysis**

Whether intervention is sought as of right or by permission of the court, a motion under Rule 24 must be timely. NAACP v. New York, 413 U.S. 345, 365 (1973). "Timeliness is to be determined from all the circumstances." Id. at 366. In the Sixth Circuit, five factors primarily govern a court's determination of whether the proposed intervenor timely filed her motion:

    (1) the point to which the suit ha[s] progressed;
    (2) the purpose for which intervention is sought;
    (3) the length of time preceding the application

7

> during which the proposed intervenor knew or reasonably should have known of h[er] interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after [s]he knew or reasonably should have known of h[er] interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Triax Co. v. TRW, Inc., 724 F.2d 1224, 1228 (6th Cir. 1984) (citing Michigan Ass'n for Retarded Citizens v. Smith, 657 F.2d 102, 105 (6th Cir. 1981)). A court must consider whether a motion is timely in relation to the procedural posture of the case at issue. "The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important" factors. Stupak-Thrall, 226 F.3d at 475 (citation omitted).

**A. This Case Has Reached a Turning Point**

In addressing the first prong of the timeliness test, Plaintiffs argue that "this case remains at an early stage in the litigation continuum" so that their intervention motion does not arrive just before trial. (Plaintiffs' Amended Reply Memorandum at 1.) ("Pls.' Reply") Defendants respond that the deadlines to add parties and for class-certification discovery have long since passed; this Court has already denied a motion to dismiss; and, absent Plaintiffs' motion, this case would be ready to proceed to merits discovery in preparation for an

8

anticipated summary judgment motion. (Defs.' Resp. at 6-9.)

Between Plaintiffs' filing suit on June 20, 2006, and their September 18, 2009, Motion to Intervene, several important litigation milestones have passed. This Court denied Defendants' Motion to Dismiss on May 17, 2007. (Cf. Pls.' Reply at 2 (asserting that no party has briefed or filed a dispositive motion).) The deadline to join additional parties passed on August 28, 2007. (See Supplemental Scheduling Order, Dkt. No. 139, at 1.) Class-certification discovery ended on January 31, 2008; and on September 4, 2009, this Court denied Plaintiffs' motion for class certification. (Clarke Certification Order at 13-16.) The case is not at an early stage of the litigation as Plaintiffs suggest because the Court has denied a motion to dismiss and a motion for class certification. A trial, however, is not imminent. This case has entered the next phase, during which the parties will conduct discovery on the merits of Plaintiffs' individual claims in preparation for a motion for summary judgment. The phase during which this case was a potential class action has ended. The first factor, consequently, weighs in favor of a finding of untimeliness.

**B. Bachelder Has Known of Her Interest But Failed to Intervene Until the End of the Class Certification Phase**

Factors two and three, which ask the purpose for which a party seeks to intervene and how long the party has known of her interest, point definitively toward a finding that Plaintiffs' motion is not timely. It is undisputed that, as of August 28, 2007, Plaintiffs' (and Bachelder's) counsel were aware of significant and potentially fatal obstacles to the adequacy of Clarke and Dillard as potential class representatives. (See Pls.' Scheduling Memo at 3 (noting that by this date counsel knew of Dillard's bankruptcy filing).) Because the deadline to add additional parties expired the same day, Plaintiffs could have moved to extend the deadline after learning that Dillard was a debtor in a bankruptcy proceeding. (Clarke Scheduling Order at 10 (stating that, had Plaintiffs immediately moved to amend the scheduling order, the Court would have granted the request); see also Supplemental Scheduling Order, Dkt. No. 139, at 1.) Instead, Plaintiffs waited nearly three months before informing Defendants of their desire to add Bachelder as a Plaintiff. (Clarke Scheduling Order at 10.) Plaintiffs then waited an additional two months before filing their January 4, 2008, Motion to Amend the Scheduling Order and Complaint.

10

Magistrate Judge Vescovo denied Plaintiffs' Motion to Amend on February 13, 2008. Rather than filing a motion for intervention at that time, Plaintiffs waited <u>nineteen months</u> before filing their Rule 24 motion on September 18, 2009. In the interim, this Court had denied Plaintiffs' Motion for Class Certification on the grounds Plaintiffs had predicted in January 2008. <u>Compare</u> Pls.' Scheduling Memo at 3-4 (explaining that Clarke's conflicting ties and Dillard's bankruptcy raise serious questions about their ability to serve as class representatives), <u>with</u> <u>Clarke</u> Certification Order at 13-16 (finding Clarke and Dillard inadequate class representatives on those grounds).

Plaintiffs attempt to excuse the nineteen-month gap in filing their Rule 24 motion by noting that they filed the present motion only fourteen days after this Court denied class certification.[1] (Pls.' Memo at 4-5.) Plaintiffs' argument is unpersuasive. As they have acknowledged, Bachelder could have moved to intervene at any point after

---

[1] Plaintiffs also attempt to excuse their failure to file a Rule 24 motion after the denial of their Motion to Amend by arguing that Sixth Circuit case law would have required them to <u>prove</u> the inadequacy of Clarke and Dillard and thereby simultaneously undermine their then-pending class certification motion. They are incorrect. The relevant case law demonstrates that, in order to intervene, Bachelder need only have shown that Clarke and Dillard <u>might</u> be inadequate – a burden that the Sixth Circuit has described as "<u>minimal</u>." <u>Compare</u> Pls.' Reply at 6 ("In this Circuit, potential intervenors bear the burden to <u>prove</u> the inadequacy of the named plaintiffs to intervene successfully) (citation omitted), <u>with</u> <u>Grutter v. Bollinger</u>, 188 F.3d 394, 400 (6th Cir. 1999) ("The proposed intervenors need show only that there is a <u>potential</u> for inadequate representation.") (citation omitted).

11

learning of Dillard's bankruptcy. (Pls.' Scheduling Memo at 13 (Intervention "need not wait until any specific time.").) Plaintiffs had knowledge that both of their proposed class representatives were flawed more than two years before they sought permission for Bachelder to intervene.[2] Although Bachelder had signed a retainer agreement with Plaintiffs' counsel only ten days after counsel filed the present suit, they allowed deadline after deadline to pass without filing a motion under Rule 24. (Pls.' Scheduling Memo at 3; see also Clarke Scheduling Order at 3.) Only after this Court had denied class certification did counsel file the Motion to Intervene. It is this refusal to act while knowing the unchanging facts for more than two years that separates this case from those Plaintiffs cite in support of their motion.

The only time one can know whether a party intends to appeal is after a court enters judgment. Cf. Triax, 724 F.2d at 1228-29 (allowing intervention when plaintiff announced its intention not to appeal adverse judgment). The only time one can know whether an unaffiliated co-party will make an antagonistic argument is after it files its brief. Cf. Jansen v. City of Cincinnati, 904 F.2d 336, 343-44 (6th Cir. 1990) (allowing intervention by group of

---

[2] From August 28, 2007, until September 18, 2009.

12

firefighters when city made arguments disadvantageous to proposed intervenors). Plaintiffs here knew exactly what arguments Defendants would make against Clarke and Dillard. Plaintiffs also knew that Bachelder would make complementary arguments for class certification because she shared their counsel. Nonetheless, Plaintiffs failed to take action until all class-certification discovery had closed and this Court had denied Plaintiffs' Motion. That failure is all the more significant because Plaintiffs intended from the outset to pursue this case as a class action. Maintaining a viable class representative should have been a first priority. Here, it was not. For that reason, factors two and three weigh strongly against a finding of timeliness.

**C. Bachelder's Intervention Would Prejudice Defendants**

Plaintiffs argue that, despite their decision to wait until after the denial of class certification to move for Bachelder's intervention, Defendants will suffer no serious prejudice. Plaintiffs argue that adding Bachelder will not result in the expansion or addition of any claims because Bachelder intends to raise "questions of law and fact identical to those raised by the named Plaintiffs." (Pls.' Reply at 3.) Plaintiffs further note that they have already "provided Defendants with all documents in Ms.

13

Bachelder's possession relevant to this suit and with answers on her behalf in response to Defendants' document requests and interrogatories." (Pls.' Reply at 7.) Defendants respond by pointing to the Plaintiffs' own amended reply, which states that Plaintiffs now anticipate seeking to re-litigate the class certification issue, thus contradicting Plaintiffs' claims that Defendants would not be significantly burdened. (Defendants' Sur-Reply in Opposition to Motion to Intervene at 2-4.) ("Defs.' Sur-Reply")

In their original reply memorandum, Plaintiffs claimed that, at most, Defendants would have to depose only "one additional witness," conduct a minimal search of their own files for information about Bachelder, and review the responsive documents Plaintiffs had already provided if the Court granted the Motion to Intervene. (Plaintiffs' Original Reply Memorandum at 7.) However, in their amended reply filed on November 17, 2009, Plaintiffs state that Bachelder, if allowed to intervene, "anticipates filing a renewed motion for class certification that will require discovery and briefing on issues beyond her adequacy as a class representative." (Pls.' Reply at 8.) Plaintiffs also assert that the new effort to gain class certification will require the filing of a report by a second, new

14

expert, Princeton University economist Professor Orley Ashenfelter. (Id. at 9.) Ashenfelter will support Plaintiffs new class certification effort by, inter alia, proposing "an alternative certification of a narrowed class." (Id.)

Plaintiffs' amended reply demonstrates that, far from being a minor inconvenience, the addition of Bachelder would serve to derail this case from its current track to trial and/or disposition by summary judgment. Having had the benefit of this Court's prior order denying class certification as well as the orders of other courts in related litigation around the country, Plaintiffs now effectively seek to relitigate the issue of class certification with the benefit of hindsight. (See Defs.' Sur-Reply at 7 (noting that other federal courts have rejected the analysis of Plaintiffs' original expert, Professor Henry Farber).) To do so, they will require the Defendants to start from scratch. Class certification discovery, which closed well after Bachelder and her counsel first knew of her interest, will begin again. Defendants will have to analyze and respond to a completely new expert report. To accommodate a new proposed class definition, Plaintiffs will need to amend the complaint, requiring a further response from Defendants. Thus,

15

Plaintiffs wish to turn back the clock to August 2007, with the attendant benefit of knowing what the Defendants' arguments will be.[3] Had Plaintiffs timely filed their motion to intervene, this process could have begun without interrupting the orderly progress of the case or giving the appearance of being staged by the Plaintiffs to gain a tactical litigation advantage. Cf. Jansen, 904 F.2d at 341 (allowing intervention where it would result in no delay).

The purpose of intervention under Rule 24 is not to allow counsel to present new arguments attached to different litigants' faces until one succeeds. Cf. NAACP, 413 U.S. at 367 (denying motion to intervene where party failed to act at the "critical stage" when it became apparent that its interest was endangered). Plaintiffs have acknowledged in their prior filings with the Court that a motion to intervene would work significant prejudice to the Defendants. (See Pls.' Scheduling Memo at 4 (delays resulting from intervention "would be more substantial"); id. at 11 (intervention "would likely cause delays"

---

[3] Plaintiffs' Sur-Sur Reply further confirms this. (See Plaintiffs' Response to Defendants' Sur-Reply at 3). In their latest filing, the Plaintiffs explain that they will need additional discovery on "[a]gency nurse rates; agency nurse usage; information related to Defendants' internal agencies; information related to qualifications for agency RNs; information related to turnover costs; and possibly, information on certain other human resource costs of regular staff RNs to the extent it was not already produced." (Id.) To be certain, "This is not intended to be a definitive list." (Id. at 3 n.2.)

16

(emphasis in original)); id. at 14 ("[T]he delays Defendants fear would certainly arise if Plaintiffs were to wait [to intervene].").) The Court agrees with Plaintiffs' prior warnings and finds that allowing Bachelder's intervention now would cause significant prejudice to Defendants. See Fed. R. Civ. P. 24(b)(3) ("[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

**D. Special Considerations**

Plaintiffs argue that the nature of this case, a proposed class action, is a special consideration counseling in favor of allowing Bachelder to intervene. (Pls.' Memo at 6 (citing Little Caesar Enters., Inc. v. Smith, Nos. 93-40520, 93-40521, 1996 U.S. Dist. LEXIS 21012, at *24 n.3 (E.D. Mich. Oct. 2, 1996).) Although it is true that under Federal Rule of Civil Procedure 23, which governs class actions, "[a]ffording plaintiffs the opportunity to provide . . . substitutes is the common practice," Little Caesar Enters., 1996 U.S. Dist. LEXIS 21012, at *24 n.3, it is also true that this Court must apply the timeliness test by looking solely at this particular case. See Stupak-Thrall, 226 F.3d at 475. Plaintiffs have cited no case where a court has allowed

17

intervention under Rule 24 where a proposed intervenor 1) had known of her interests since the filing of the litigation; 2) had employed the same counsel as the existing named Plaintiffs; 3) had already failed to gain admission as a party through amendment because of a lack of diligence; and 4) had then waited until the close of class-certification discovery and a decision on the merits of certification before moving to intervene. Compare United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977) ("[A]s soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests."); Jansen, 904 F.2d at 341 (only two weeks after proposed intervenors learned of party's failure to make critical argument, they filed a Rule 24 motion); and Triax, 724 F.2d at 1228 (after party announced it would not appeal, proposed intervenor promptly moved to intervene), with NAACP, 413 U.S. at 349 (denying motion where party failed to intervene after Federal Government announced its intention not to oppose summary judgment); Stupak-Thrall, 226 F.3d at 477-78 (motion denied where party knew of its interest from outset of litigation; new experts, depositions, and discovery required; and party waited until discovery had ended to

18

file motion); and Reed v. Annett Holdings, Inc., No. 2:04-0214, 2006 U.S. Dist. LEXIS 22707, at *21 (S.D. W.Va. Apr. 20, 2006) (denying motion where party unsuccessfully moved earlier to amend the complaint). The Court finds that, to the extent this suit's status as a proposed class action constitutes a special circumstance, it militates in favor of a finding of untimeliness.

### E. The Motion Is Untimely

Having examined the five factors, three factors weigh strongly in favor of finding that the intervention motion is untimely. Bachelder has long known of her interest in this case. Despite the parties' intention to litigate this case as a class action, they continually failed to take affirmative steps to maintain a viable potential class representative. Allowing Bachelder to intervene at this point would cause Defendants significant prejudice. One factor, the presence of special circumstances, moderately tilts in favor of finding the motion untimely; and the final factor, the point to which the suit has progressed, emphasizes the tardiness of Bachelder's motion. This suit is no longer a proposed class action. It is now a suit by two parties seeking redress for their individual claims. The Court finds that, considering these factors as a whole, the Plaintiffs' motion to intervene is untimely.

19

**IV.   Conclusion**

Because Plaintiffs' motion is untimely, the analysis is at an end and "intervention must be denied." NAACP, 413 U.S. at 365; see also Stupak-Thrall, 226 F.3d at 479.  The Court, therefore, DENIES Plaintiffs' Motion to Intervene.

So ordered this 30th day of December, 2009.

                                            s/ Samuel H. Mays, Jr.
                                            SAMUEL H. MAYS, JR.
                                            UNITED STATES DISTRICT JUDGE